ANDREW D. HEROLD, ESQ., Bar No. 178640
aherold@heroldsagerlaw.com
JOSHUA A. ZLOTLOW, ESQ., Bar No. 211399
jzlotlow@heroldsagerlaw.com
HEROLD & SAGER
550 Second Street, Suite 200
Encinitas, CA  92024
Tele:  760-487-1047; Fax:  760-487-1064

Attorneys for Plaintiff SECURITY NATIONAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITY NATIONAL INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF SACRAMENTO; STARR INDEMNITY & LIABILITY COMPANY; IRONSHORE INDEMNITY INC.; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO BRIT GLOBAL SPECIALTY SYNDICATE 2987; and DOES 1-10,<br><br>　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE INDEMNIFICATION, UNJUST ENRICHMENT, REIMBURSEMENT, EQUITABLE REIMBURSEMENT, EQUITABLE SUBROGATION, AND ACCOUNTING** |

Comes now Plaintiff, SECURITY NATIONAL INSURANCE COMPANY ("Security National") and alleges as follows:

## I.

## NATURE OF THE CASE

1.  Security National seeks a declaration pursuant to 28 U.S.C. § 2201(a) that it has paid more than its equitable or legal share of the amounts required to settle the claims against the CITY

///

OF SACRAMENTO in the Underlying Actions (defined *infra*) and that it is entitled to recover all amounts it paid in excess of its duty.

## II.

## THE PARTIES

2. Security National is and was at all relevant times, a corporation in good standing, organized and existing under the laws of the State of Delaware with its principal place of business in the State of Ohio.

3. On information and belief, Defendant CITY OF SACRAMENTO (the "City") is and was at all relevant times a public entity of the State of California, created and existing under the laws of the state of California, and located in Sacramento County.

4. On information and belief, Defendant STARR INDEMNITY & LIABILITY COMPANY ("Starr") is and was at all relevant times, a corporation organized and existing under the laws of the State of Texas, with its principal place of business in the State of New York.

5. On information and belief, Defendant IRONSHORE INDEMNITY, INC. ("Ironshore") is and was at all relevant times, a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in the Commonwealth of Massachusetts.

6. On information and belief, Defendant CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO BRIT GLOBAL SPECIALTY SYNDICATE 2987 ("Brit") is and was at all relevant times, a foreign business entity organized with a foreign principal place of business.

7. Starr, Ironshore and Brit will hereinafter be referenced as "Insurer Defendants."

## III.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the amount in controversy, exclusive of interest and costs, exceeds $75,000 and because this action is between citizens of different States.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs.

///

///

10. There is complete diversity of citizenship between Security National and all defendants because Security National is a Delaware corporation that has its primary place of business in Ohio, while all named defendants are citizens of states other than Delaware and Ohio.

11. An actual controversy exists between Security National and each of the Defendants named herein, and, therefore, this Court may declare the rights and other legal relations of the parties hereto under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57.

12. This Court has general personal jurisdiction over each of the named Defendants because they are all have minimum contacts with the State of California in that the City is a citizen thereof and the Insurer Defendants each issued insurance policies to the City.

13. Venue is proper under 28 U.S.C. §1391(b)(1) and §1392(b)(2) because the City is within the Eastern District of California, and acts or omissions giving rise to this Complaint occurred within the Eastern District of California.

## IV.

## FACTUAL ALLEGATIONS

**A.     The Insurance Policies**

14. Security National issued Special Excess Policies for Participants of the Alliant National Municipal Liability Program (ANML) to the City as Participating Named Insured, Policy Nos. ANML SPP101133102, ANMLSPP101133103, and ANMLSPP101133104, in effect from July 1, 2013-July 1, 2014, July 1, 2014-July 1, 2015, and July 1, 2015-July 1, 2016, with a Per Occurrence Limit of Insurance of $10 million, subject to a $2 million Any One Occurrence for "Bodily Injury"/Public Officials Errors and Omissions Retained Limit (defined *infra*); and a $1 million Any One Occurrence/Aggregate for "Bodily Injury"/Public Officials Errors and Omissions Loss Corridor (the "Security National Policies"), true and correct copies of which are attached as Exhibits 1-3.

15. On information and belief, Starr issued to the City Excess Liability Policy Nos. SISCPEA00000613 for the period of July 1, 2013 to July 1, 2014, SISCPEA00000223 for the period of July 1, 2014 to July 1, 2015 (the "Starr Policies"). Each of the Starr Policies reflects a $10 million per "Occurrence" limit and provides in the "Schedule of Underlying Insurance" that each is excess

///

to the 2013-2014 and 2014-2015 policies issued by Security National. Security National presently does not have copies of the Starr Policies.

16. On information and belief, Brit issued to the City an excess liability policy for the period of July 1, 2015 to July 1, 2016 ("Brit Policy"). The Brit Policy reflects a $10 million per "occurrence" limit and provides in the "Schedule of Underlying Insurance" that it is excess to the Security National 2015-2016 Policy. Security National presently does not have a copy of the Brit Policy.

17. On information and belief, Ironshore issued to the City policies in effect from July 1, 2013-July 1, 2014, July 1, 2014-July 1, 2015 and, July 1, 2015-July 1, 2016 with a Per Occurrence Limit of Insurance of $10 million for each policy (the "Ironshore Policies"). The Ironshore Policies are excess to the other excess to the policies issued by Starr and Brit. Security National presently does not have copies of the Ironshore Policies.

18. A summary of the City's coverage is set forth below.

| 2013-2014 | 2014-2015 | 2015-2016 |
|---|---|---|
| **Ironshore** $10 Million | **Ironshore** $10 Million | **Ironshore** $10 Million |
| **Starr** $10 Million Each Occurrence or Wrongful Act and in the Aggregate | **Starr** $10 Million Each Occurrence or Wrongful Act and in the Aggregate | **Brit** $10 Million |
| **Security National** $10 Million Each Occurrence or Wrongful Act and in the Aggregate | **Security National** $10 Million Each Occurrence or Wrongful Act and in the Aggregate | **Security National** $10 Million Each Occurrence or Wrongful Act and in the Aggregate |
| **City** $2 Million Retained Limit for Each Occurrence or Wrongful Act and a $1 Million Loss Corridor Per Occurrence or Wrongful Act | **City** $2 Million Retained Limit for Each Occurrence or Wrongful Act and a $1 Million Loss Corridor Per Occurrence or Wrongful Act | **City** $2 Million Retained Limit for Each Occurrence or Wrongful Act and a $1 Million Loss Corridor Per Occurrence or Wrongful Act |

///

B. **The Underlying Actions**

19. On December 27, 2016, Plaintiff AV Doe filed *AV Doe, et al. v. Joshua Rolando Vasquez, et al*, Sacramento Superior Court Case No. 34-2016-00204753. Named as defendants were perpetrator Joshua Rolando Vasquez; school principal Rosario Guillen-Jove; the City of Sacramento, Sacramento City Unified School District, and unidentified Doe defendants.

20. On or about August 28, 2019, plaintiffs BPM Doe, NH Doe, GR Doe, MPC Doe and NG Does filed *BPM Doe, et al. v. City of Sacramento, et al.*, Sacramento Superior Court Case No. 34-2019-00263715 against the City and the other defendants named in the *AV Doe* complaint.

21. On October 12, 2021, Plaintiff Joseph Doe 7 filed *Joseph Doe 7, et al. v. Sacramento City Unified School District, et al.*, Sacramento Superior Court Case No. 34-2021-00309539.

22. According to the *AV Doe*, *BPM Doe*, and *Joseph Doe 7* complaints (the "Underlying Actions"), the plaintiffs therein ("Underlying Plaintiffs") were minor participants in an after-school program operated by the City called "START" at the Mark Twain Elementary School and suffered abuse by Vasquez while he was employed by the City as a START worker and "program leader."

23. According to the Underlying Actions and evidence therein, Vasquez abused one or more of the Underlying Plaintiffs and other children in each of the 2013-2014, 2014-2015 and 2015-2016 school years and respective Security National Policy periods.

24. The Underlying Actions alleged the City breached its duty to properly train, supervise, investigate, discipline, and terminate the employment of Vasquez whom the City assigned to care for the Underlying Plaintiffs, who were entrusted and placed in the custody, care and control of the City.

25. The Underlying Actions also alleged the City knew or had reason to know of Vasquez's dangerous and exploitive propensities, that Vasquez was a dangerous and unfit agent, that Vasquez was grooming and acting inappropriately with students at Mark Twain Elementary School, but that despite such knowledge, the City negligently failed to monitor and supervise Vasquez, failed to use reasonable care in investigating Vasquez, allowed Vasquez to remain in positions of trust and authority, thereby enabling Vasquez to abuse his positions of trust and authority so as to commit the childhood sexual abuse of numerous children including the Underlying Plaintiffs. Additionally, the Underlying Actions alleged that the City failed take reasonable measures to prevent further childhood

sexual abuse of the Underlying Plaintiffs, which could have been avoided and at least abated, had the City properly investigated and supervised Vasquez.

26. Further, the Underlying Actions alleged the City negligently failed to supervise, or provide reasonable supervision of the Underlying Plaintiffs, and other minor children, and failed to use reasonable care in protecting those children from Vasquez while the Underlying Plaintiffs and other children were on school grounds.

27. The Underlying Actions alleged the underlying cause of the City's alleged liability was its negligence with respect to Vasquez.

28. Security National indemnified the City subject to a reservation of rights by paying for the settlement of the claims against the City in the Underlying Actions less the number of retained limits that the City contended were applicable (3) notwithstanding the disagreements among the parties to this action regarding the applicable number of retained limits and corresponding limits of insurance.

**C.      The Security National Policy Language**

29. Provisions from the Security National Policies pertinent to the question of the applicable number of Occurrences and/or Wrongful Acts and applicable Retained Limits arising from the Underlying Actions include the following:

<u>SECTION I - COVERAGE AGREEMENT</u>

The Company will pay on behalf of the insured for ultimate net loss to which this policy applies in excess of the retained limit because of:

Coverage A.    BODILY INJURY and PROPERTY DAMAGE to which this policy applies, caused by an occurrence;

…

Coverage C.    PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY to which this policy applies;

…

///

///

SECTION III. RETAINED LIMIT–THE COMPANY'S LIMIT OF LIABILITY

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain injury or damage, (3) claims made, or (4) suits brought on account of bodily injury, property damage, personal injury, public officials errors and omissions liability, or employment practices liability, the Company's liability is limited as follows:

A. With respect to bodily injury, property damage, personal injury, public officials errors and omissions liability, or any combination thereof, the Company's liability shall be only for the ultimate net loss in excess of the retained limit as specified in the Declarations as the result of any one occurrence, offense, or wrongful act, and then for an amount not exceeding the Company's limit of liability specified in the Declarations as the result of any one occurrence, offense, or wrongful act.

For the purpose of determining the limit of the Company's liability, as respects Coverages A and B, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence under Coverage A or one offense under Coverage B. For the purpose of determining the limit of the Company's liability, as respects Coverages C and D, all damages arising out of a single act, error or omission or a series of related acts, errors or omissions shall be treated as arising from a single wrongful act. There is no limit on the number of occurrences, offenses, or wrongful acts during the policy period for which claims may be made.

B. Bodily injury, property damage, personal injury, public officials errors and omissions liability or employment practices liability taking place over more than one policy period shall be deemed to have taken place during the first policy period and only that limit shall apply.

…

SECTION VI – EXCLUSIONS

As respects ultimate net loss, this policy does not apply, in whole or in part to:

…

F. UNDER COVERAGE A

To personal injury, public officials error and omissions liability, and employment practices liability.

Nothing contained in this exclusion shall limit the insured's coverage, if applicable, under Coverages B, C, or D of this policy.

7
SECURITY NATIONAL INSURANCE COMPANY'S COMPLAINT

…

H. UNDER COVERAGE C

    a. To bodily injury, property damage, personal injury, or employment practices liability;

Nothing contained in this exclusion shall limit the insured's coverage, if applicable, under Coverages A, B, and D of this policy.

## SECTION VII – DEFINITIONS

…

C. Bodily injury means bodily harm, sickness, disability or disease sustained by a person, including death resulting from any of these at any time. Bodily injury includes mental injury, mental anguish, humiliation, shock or death if resulting directly from bodily injury. Bodily injury shall include care, loss of services, loss of consortium, or death resulting at any time from the bodily injury.

…

T. Occurrence means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage, neither expected nor intended from the standpoint of the insured unless the bodily injury or property damage results from the use of reasonable force to protect persons or property. All damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence. Public officials errors and omissions liability means any claim or suit against an insured, whether individually or collectively, arising out of any wrongful act, including misfeasance, malfeasance or nonfeasance, or solely by reason of being or having been insureds. [Hereinafter "Occurrence".]

…

W. Retained Limit means the Retained Limit amount shown on the Declarations page. This amount applies to each and every occurrence, . . . whether or not you maintain any applicable insurance.

…

BB. Ultimate net loss means the total sum which the insured becomes legally obligated to pay as damages by reason of judgments or by reason of settlements made, covered hereunder, with the written consent of the insured and the Company, plus defense costs.

…

DD. Wrongful act means any actual or alleged act, error or omission arising out of the conduct or performance of the insured in the performance of his or her duties for or on behalf of the Named Insured. All damages arising out of a single act, error or omission or a series of related acts, errors or omissions shall be treated as arising from a single wrongful act. [Hereinafter "Wrongful Act".]

\* \* \*

SPECIAL EXCESS LIABILITY POLICY DECLARATIONS FOR PARTICIPANTS OF THE ALLIANT NATIONAL MUNICIPAL LIABILITY PROGRAM (ANML*)*

…

ITEM 3. LIMITS OF INSURANCE

The Limits of Insurance, subject to all the terms and conditions of the Policy are:

A. <u>Limits of Insurance</u>

...

    b. Per Occurrence

        $10,000,000    "Any One Occurrence for "Bodily Injury", "Property Damage", "Public Officials Errors And Omissions", "Employment Practices Liability", or Personal Injury" or any combination Thereof

B. <u>Retained Limit</u>

        $2,000,000    "Any One Occurrence for "Bodily Injury", Property Damage", "Public Officials Errors And Omissions", "Employment Practices Liability", or "Personal Injury" or any combination Thereof

    30.    In addition to the Occurrence definition and the use of Occurrence in the Retained Limit and Limits of Insurance sections of the Security National Policies set forth above, Section III. begins: "Regardless of the number of … claims made … the Company's liability is limited as follows . . . ." Based thereon, the City's alleged liability constituted a single Wrongful Act for purposes of the Limit and the Retention.

**FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

**(THE METHOD OF DETERMINING THE NUMBER OF OCCURRENCES OR WRONGFUL ACTS APPLICABLE TO THE UNDERLYING PLAINTIFFS' CLAIMS AGAINST THE CITY – AGAINST ALL DEFENDANTS)**

31. Security National incorporates the allegations contained in paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32. Security National contends that the appropriate method to determine the number of applicable occurrences for the Underlying Action as dictated by existing law is that there is one occurrence per victim per policy/period school year in which the victim was abused or alternatively, that the City's liability was premised entirely upon a single Wrongful Act whereas the City contends that the claims of the Underlying Plaintiffs implicate one Occurrence per policy period (three total).

33. A present and actual controversy exists between Security National and Defendants, and each of them, with respect to the method of determining of the number of Occurrences or Wrongful Acts and available limits implicated by settlement of the Underlying Plaintiffs' claims against the City. Based thereon, this Court has authority to issue a declaratory judgment concerning the parties' respective rights and duties. The requested judicial determination is appropriate and necessary to resolve a present controversy by defining the respective rights and obligations of the parties. No other adequate remedy exists by which the rights of the parties may be determined.

**SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**

**(THE NUMBER OF OCCURRENCES, APPLICABLE RETAINED LIMITS AND SECURITY NATIONAL POLICY LIMITS APPLICABLE TO THE UNDERLYING PLAINTIFFS' CLAIMS AGAINST THE CITY – AGAINST ALL DEFENDANTS)**

34. Security National incorporates the allegations contained in paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. Security National and Defendants, including amongst each other, dispute the number of Occurrences, applicable number of retained limits, and Security National Policy limits applicable to the Underlying Plaintiffs' claims against the City.

///

36. A present and actual controversy exists between Security National and Defendants and amongst the Defendants, with respect to the number of Occurrences under the Security National Policies applicable to the City's alleged liability in the Underlying Actions. Based thereon, this Court has authority to issue a declaratory judgment concerning the parties' respective rights and duties. The requested judicial determination is appropriate and necessary to resolve a present controversy by defining the respective rights and obligations of the parties. No other adequate remedy exists by which the rights of the parties may be determined.

## THIRD CAUSE OF ACTION FOR EQUITABLE INDEMNIFICATION
## (AGAINST INSURER DEFENDANTS)

37. Security National incorporates the allegations contained in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. Security National paid an amount in excess of its legal or equitable share, if any, of the amounts paid to settle the Underlying Actions. Security National paid amounts for which Insurer Defendants, and each of them, were primarily liable and which in equity and good conscience should have been paid by the Insurer Defendants, and each of them.

39. Each Defendant herein refuses to pay for its share of the settlements relating to the Underlying Actions.

40. Under the equitable doctrine of indemnification, each of the Insurer Defendants should pay to Security National said Defendant's share of the amounts paid by Security National.

## FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

41. Security National incorporates the allegations contained in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. Security National was required to indemnify the City pursuant to the terms and conditions of the Security National Policies.

43. Some of the amounts paid by Security National to indemnify the City for the Underlying Actions were for amounts that should have been paid by some combination of the Defendants.

44. Defendants, and each of them, are obligated to pay their respective portion of the Underlying Settlements by reason of their respectively underwritten policies of insurance.

45. Defendants, and each of them, have to date failed to pay the appropriate amounts required under the applicable policies of insurance.

46. To the extent that Security National paid amounts to settle the Underlying Actions that Defendants were obligated to pay, Defendants, and each of them, will have been unjustly enriched by such payments.

47. Defendants' unjust enrichment was and continues to be at Security National's expense.

48. It is just and equitable that restitution be made by Defendants, and each of them, to Security National for the benefits Defendants have enjoyed at Security National's expense.

## FIFTH CAUSE OF ACTION FOR REIMBURSEMENT
## (AGAINST THE CITY)

49. Security National incorporates the allegations contained in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. Security National paid amounts to settle the Underlying Actions. When Security National agreed to pay to settle the Underlying Actions, it reserved all of its rights, including the right to seek reimbursement.

51. The Security National Policies only require that Security National indemnify the City in accordance with the policies' terms and conditions. To the extent that Security National paid amounts to settle the Underlying Actions that it was not contractually obligated to pay, the City will have been unjustly enriched by such payments.

52. As a result of the unjust enrichment, a quasi-contractual right of reimbursement has arisen in favor of Security National against the City for payments in excess of Security National's contractual obligations, plus interest. The precise reimbursement amount is subject to proof at trial.

## SIXTH CAUSE OF ACTION FOR EQUITABLE REIMBURSEMENT
## (AGAINST INSURER DEFENDANTS)

53. Security National incorporates the allegations contained in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54. Security National paid amounts to settle the Underlying Actions. When Security National paid to settle the Underlying Actions, it reserved all of its rights, including the right to seek reimbursement.

55. The Security National Policies only require that Security National indemnify the City in accordance with the policies' terms and conditions. To the extent that Security National paid amounts to settle the Underlying Actions that it was not contractually obligated to pay, the Insurer Defendants will have been unjustly enriched by such payments.

56. As a result of the unjust enrichment, a quasi-contractual right of reimbursement has arisen in favor of Security National in the amount paid for the settlement of the Underlying Actions in amounts excess of what it was contractually obligated to pay, plus interest. The precise reimbursement amount is subject to proof at trial.

## SEVENTH CAUSE OF ACTION FOR EQUITABLE SUBROGATION
## (AGAINST INSURER DEFENDANTS)

57. Security National incorporates the allegations contained in paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58. Security National is informed and believes and thereon alleges that some or all of the policies issued by Insurer Defendants detailed above obligate the Insurer Defendants to have funded a portion of the settlement of the Underlying Actions.

59. Security National is informed and believes and thereon alleges that Insurer Defendants have not paid an equitable share of settlement of the Underlying Actions in relation to their contractual obligations owed to the City.

60. Security National is not responsible for all of the amounts it paid to settle the Underlying Actions against the City.

61. Security National has paid amounts to settle the Underlying Actions even though Insurer Defendants and each of them are primarily and/or additionally responsible for some of the amounts paid by Security National.

62. Security National has settled the Underlying Actions under a reservation of rights pursuant to the terms and conditions of the Security National Policies and not as a volunteer.

63. The City has existing, valid, and assignable causes of action against the Insurer Defendants and each of them for failure to fund their contractual share of the settlement of the Underlying Actions, which the City could have asserted for its own benefit had Security National not contributed more than its equitable and contractual share of the settlement of the Underlying Actions.

64. Pursuant to the terms and conditions of the Security National Policies, and by operation of law, Security National is the assignee of, and has become subrogated to, the City's rights, remedies, and causes of action, substantive and procedural, against the Insurer Defendants in connection with the settlement of the Underlying Actions.

65. Security National has suffered damages as a direct and proximate result of Insurer Defendants' failure to fund their appropriate shares of the settlement of the Underlying Actions as required pursuant to their policies issued to the City.

66. Security National is thus entitled to recover as damages from Insurer Defendants and each of them the amounts Security National has paid in excess of its contractual obligation to settle the Underlying Actions.

## EIGHTH CAUSE OF ACTION FOR AN ACCOUNTING
### (AGAINST ALL DEFENDANTS)

67. Security National incorporates the allegations contained in paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68. Some of the amounts Security National paid to settle the Underlying Actions constitute amounts Security National was not contractually obligated to pay and is therefore entitled to reimbursement of such sums, in an amount according to proof at trial in an amount that is currently unknown to Security National and cannot be ascertained without an accounting.

## NINTH CAUSE OF ACTION FOR DECLARATORY JUDGMENT
### (SATISFACTION OF THE LOSS CORRIDOR –AGAINST THE CITY)

69. Security National incorporates the allegations contained in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70. Security National also issued Special Excess Policy for Participants of the Alliant National Municipal Liability Program (ANML) to the City as Participating Named Insured, Policy

No. ANML SPP1011331 01 in effect from 1, 2012-July 1, 2013, a true and correct copy of which is attached as Exhibit 4 (the "2012-2013 Security National Policy"). The 2012-2013 Security National Policy and the Security National Policies each include a $1 million Any One Occurrence/Aggregate for "Bodily Injury"/Public Officials Errors and Omissions Loss Corridor, which provides that the City must satisfy an aggregate Loss Corridor of $1 million and the Retained Limit.

71.  Security National is informed and believes that the City contends the Loss Corridor under the 2012-2013 Security National Policy and the Security National Policies has been satisfied by some combination of the Underlying Actions and additional claims whereas Security National disputes this contention.

72.  A present and actual controversy exists between Security National and the City, and each of them, with respect to the satisfaction of the Loss Corridor of the 2012-2013 Security National Policy and the Security National Policies. Based thereon, this Court has authority to issue a declaratory judgment concerning the parties' respective rights and duties. The requested judicial determination is appropriate and necessary to resolve a present controversy by defining the respective rights and obligations of the parties. No other adequate remedy exists by which the rights of the parties may be determined.

**PRAYER FOR RELIEF**

WHEREFORE, Security National prays for judgment as follows:

1.  On the First Cause of Action, a declaration as to the appropriate method of determining the number of Occurrences or Wrongful Acts under the Security National Policies;

2.  On the Second Cause of Action, a declaration as to number of occurrences, applicable retained limits and Security National Policy limits applicable to the Underlying Plaintiffs' claims against the City;

3.  On the Third Cause of Action, a determination of the specific amounts of equitable indemnification owed by Defendants to Security National with respect to the settlement of the Underlying Actions, and for judgment in that amount;

///

///

1      4.      On the Fourth Cause of Action, a determination of the amounts by which Defendants and each of them, have been unjustly enriched at the expense of Security National by Security National's payment of amounts to settle the Underlying Actions, and for a judgment in that amount;

5.      On the Fifth Cause of Action, a determination that the City owes reimbursement to Security National for amounts Security National paid to settle the Underlying Actions, and for judgment in that amount;

6.      On the Sixth Cause of Action, a determination that the Insurer Defendants owe reimbursement to Security National for amounts Security National paid to settle the Underlying Actions, and for judgment in that amount;

7.      On the Seventh Cause of Action, a determination that the Insurer Defendants owe reimbursement to Security National for amounts Security National paid to settle the Underlying Actions, and for judgment in that amount;

8.      On the Eighth Cause of Action, an accounting as among Security National and Defendants, and judgment in that amount;

9.      On the Ninth Cause of Action, a declaration as to the satisfaction of the Loss Corridor of the 2012-2013 Security National Policy and the Security National Policies;

10.     For Security National's costs of suit incurred herein;

11.     For prejudgment interest according to proof; and

12.     For such further relief as the Court may deem just and proper.

DATED: September 19, 2023                HEROLD & SAGER

By: _____
ANDREW D. HEROLD, ESQ.
JOSHUA A. ZLOTLOW, ESQ.
Attorneys for Plaintiff SECURITY NATIONAL INSURANCE COMPANY